NITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
                    SOUTH BEND DIVISION

MICHELLE BERGIADIS, et al.,

    Plaintiffs,

    v.                                              Case No. 3:23-CV-614-CCB

THOR MOTOR COACH INC, et al.,

    Defendants.

## OPINION AND ORDER

Plaintiffs Michelle and Nicholas Bergiadis bought a recreational vehicle ("RV")
that was manufactured by Defendant Thor Motor Coach, an Indiana corporation, from
Giant RV in California. (ECF 44 at 4, ¶ 5). The purchase included a written limited
warranty. (ECF 37-7, 37-8). Soon after taking delivery of the RV, Plaintiffs experienced
issues with the RV that led them to seek repairs at least two times from Giant RV, one of
Defendant's service dealers in California, during their first year of ownership. The RV
was out of service for at least 131 days while it was being repaired. Some issues
remained even after the attempted repairs. As a result, Plaintiffs requested that
Defendant repurchase the RV invoking a provision of California's Song-Beverly
Consumer Warranty Act, Cal. Civ. Code § 1793.2(d)(1). In response, Defendant tried to
negotiate repairs rather than the statutory repurchase. Plaintiffs rejected Defendant's
offer. They also rejected Defendant's later offers to trade-in or replace the RV.

On these facts, Plaintiffs sued Defendant in California for breach of the express
warranty, breach of implied warranty, and violation of the 30-day repair rule in Section

1793.2(b) of the Song-Beverly Act. The case was transferred to this Court based on the forum selection clause in the applicable warranty. Despite the warranty's provision that Indiana law would apply to any claims, the parties stipulated to application of California substantive law to all of Plaintiffs' claims here in the Indiana court. That stipulation was memorialized in the California court's transfer order.

Before the Court now is Defendant's motion for summary judgment on all of Plaintiffs' claims. Based on the applicable law, facts, and arguments, Defendant's motion for summary judgment will be granted in part and denied in part.

I.    PRELIMINARY COMPLIANCE MATTERS

On the Court's Website, the undersigned has posted a document entitled *Courtroom Procedures and Trial Practice Before Judge Cristal C. Brisco* ("CPTP"). The parties are explicitly advised to "[k]now the Federal Rules of Civil . . . Procedure, the Federal Rules of Evidence, and the Local Rules of the United States District Court for the Northern District of Indiana." CPTP at 3. Additionally, "[m]otions for summary judgment and responses must comply with Fed. R. Civ. P. 56, Local Rule 56-1, and the procedures outlined therein." CPTP at 5. Plaintiffs have not complied fully with the applicable rules and procedures.

Local Rule 7-1(e)(1) limits supporting and response briefs related to any motion to 25 pages excluding tables of contents, tables of authorities, and appendices. Briefs exceeding that limit may be filed only with leave of court. N.D. Ind. L.R. 7-1(e)(2). "The twenty-five (25) page limitation on all memoranda contained in Local Rule 7-1 shall be strictly enforced." CPTP at 3. Plaintiffs violated Local Rule 7-1 by filing a 26-page

response brief. (ECF 43). As a result, the Court has only considered the first 25 pages of Plaintiffs' response brief in reaching the conclusions discussed below.

Local Rule 56-1(b)(2) requires the party opposing summary judgment to file a Response to Statement of Material Facts that includes among other things "additional facts in a section titled Additional Material Facts with numbered paragraphs continuing the sequential numbering of the Statement of Material Facts [filed by the moving party] for each additional material fact the opposing party contends is undisputed . . . ." N.D. Ind. L.R. 56-1(b)(2)(D). In their Response to Statement of Material Facts, Plaintiffs presented a section titled "Local Rule 56-1(b)(2) Statement of Undisputed Material Facts" presenting 48 additional fact paragraphs that were not numbered sequentially as required by the Local Rule. These technical violations do not affect the outcome of this case, but they do increase the time and resources necessary for the Court and opposing parties to identify any genuinely disputed facts relevant to the pending motion for summary judgment. *See* N.D. Ind. L.R. 56-1, Adv. Comm. Cmts. re: 2022 Amend.

As to evidentiary exhibits, the CPTP directs parties to file motions and exhibits before related supporting briefs so that the briefs' citations refer to the motions' and exhibits' docket numbers. CPTP at 4, 20. Specific to response briefs, parties are directed to file an appendix or index of exhibits, with any exhibits that will be cited in the supporting brief attached, before filing the supporting brief. CPTP at 20. Plaintiffs filed their brief first (ECF 43) followed by their Response to Statement of Material Facts (ECF 44) and their Index of Exhibits (ECF 45). As a result, their citations to their exhibits do not include the docket numbers, adding even more time to the opposing party's and the

Court's review of their filings. Plaintiffs complicated review further by incorporating all their exhibits into a single document with their Index of Exhibits rather than attaching them as separate exhibits labeled with a descriptive identifier as directed. CPTP at 20. Plaintiffs did bookmark their exhibits in the large PDF document they filed, but still did not comply with the Court's procedures.

Plaintiffs' citations to their exhibits also lacked reference to specific pages or paragraphs. Local Rule 56-1(e) states that "[t]he court may find a fact is not supported if the citation does not include a page or paragraph number to evidence in the record which can be presented in an admissible form unless the court may take judicial notice of the fact." If no other evidence in the record corroborates facts Plaintiffs assert through general references to its exhibits and if judicial notice of the asserted fact is unwarranted, the Court will find the fact to be unsupported in the record.

## II.    FACTUAL BACKGROUND

These facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the analysis below. For ease of reference, the Court cites mostly to the factual statements filed in the parties' statements of material facts (ECF 39, 44, 51).

On January 16, 2022, Michelle Bergiadis entered into a Retail Installment Sales Contract for a new 2022 Thor Miramar 37.1 motorhome ("the RV") from Giant RV Montclair, in Montclair, California. (ECF 51 at 10). Michelle's January 16th contract was rewritten on February 4, 2022, adding Nicholas as a purchaser. (*Id.*). On February 4th, Michelle signed an acknowledgment of Rewritten Contract, which stated that the January 16th contract she entered was mutually rescinded and no longer had any legal

effect. (*Id.*). According to the February 4th sales contract, the "Cash Price" of the RV before sales tax and fees was $190,500; the "Total Cash Price" including sales tax and fees was $229,211.68; and the "Total Sale Price" including Plaintiffs' down payment and the finance charges was $443,220.80. (ECF 44 at 9).

On February 4, 2022, both Plaintiffs signed the Thor Motor Coach Product Warranty Registration Form in connection with their purchase of the RV. (*Id.* at 10–11). The Thor Limited Warranty ("the Limited Warranty" or "the Warranty") states, among other things, that it "SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF INDIANA." (ECF 44 at 13) (emphasis in original). Under the Warranty's Repair Remedy, Defendant's "sole and exclusive obligation is to repair any covered defects discovered within the warranty coverage period . . . ." (ECF 37-8 at 11). If the Repair Remedy does not cure a defect "after a reasonable number of repair attempts," the RV owner's only remaining remedy is the Back-Up Remedy, under which Defendant pays an independent service shop, selected by the owner, to perform the repairs. (*Id.*). An RV owner cannot pursue legal or equitable remedies for breach of the Warranty or breach of any implied warranty until both the Repair Remedy and the Back-Up Remedy have been exhausted and both remedies have failed to fulfill their essential purpose. (*Id.*).

Plaintiffs experienced problems with the RV almost immediately. On February 2, 2022, Giant RV opened a repair order for issues with a batten strip above the bunk bed, a crooked front bunk bed, a noise from the generator, and the engine hood that would not close. (ECF 45 at 36–40). Plaintiffs picked up the RV on February 9, 2022.

On March 7, 2022, Plaintiffs took the RV to Giant RV for repair of several additional issues. (ECF 44 at 26). At that time, Plaintiffs signed a "Notice" from the Giant RV Service Department that said:

> Due to repair part(s) availability and or special order part(s), we ask that you pick up coach [sic] until the replacement parts become available to complete the repairs. The coach manufacturer warranty does not have a provision for loss of time, inconvenience or while waiting for special order parts. Customer understands the coach is usable and available for use, but wishes to leave unit while awaiting special order parts.

(ECF 44 at 27; ECF 37-11 at 1). Plaintiffs seized on this option and retrieved the RV from Giant RV to use before returning it to Giant RV for the repairs on April 5, 2022. (ECF 51 at 13–14; ECF 44 at 31). In the meantime, Plaintiffs had identified more issues requiring repair. On April 5, 2022, Plaintiffs once again signed the Notice that the RV was usable and available for use while waiting for parts. (ECF 37-12 at 1). The issues raised on March 7, 2022, and April 5, 2022, are reflected in the April 5th repair order.[1] (ECF 44 at 31–33).

After picking up the RV on April 30, 2022, Plaintiffs continued to use the RV but continued to experience problems. They returned the RV to Giant RV on August 25, 2022, to address new and ongoing concerns. (*Id*. at 34). Once again, Plaintiffs signed the

---

[1] –Driver side living room slideout not fully closing and intermittently extending crooked;
–Front dash cubby USB ports not working;
–Rear bathroom toilet leaking water when hooked up to city water;
–Multiple window screens missing corner locks;
–Sliding door for bunks missing bungee cord on front end;
–Center galley drawer loose, opens in transit;
–Driver side No. 3 compartment door hard to open when slideout extended, hitting bottom of slideout fascia;
–Passenger side exterior mirror head loosens after tightening;
–Entry door lock will not unlock from inside or outside; and
–Clicking sound when on generator power, GPI, or wiper.

same "usable and available for use" Notice. (ECF 37-12 at 2). Plaintiffs also signed a handwritten list of issues they had described to Giant RV. The resulting repair orders reflected the issues presented for repair that day.[2] (*Id*. at 35–37). Plaintiffs retrieved the RV on December 8, 2022.

Between February 2022, when Plaintiffs bought the RV, and August 2022, when Plaintiffs delivered the RV to Giant RV for the second and last time, Plaintiffs took at least ten trips in the RV. Within the first two weeks of taking delivery of the RV, Plaintiffs took their first weekend trip to Newport Dunes in Newport Beach, California. (ECF 44 at 18). Plaintiffs took at least three more trips to Newport Dunes, two trips to the beach at Camp Pendleton, and days trips to Huntington Beach, Newport Dunes, Camp Pendleton, and Ayala Park. (*Id*. at 19–21). After reclaiming the RV on December 8, 2022, Plaintiffs took the RV to camp at Bonelli Regional Park in San Dimas, California and used it on day trips to local parks. (*Id*. at 21–22).

---

[2] –Multiple screens missing corner locks;
  –Sliding doors for bunks missing bungee cord;
  –Driver side No. 3 compartment door hard to open when slideout extended;
  –Entry door lock will not unlock from inside or outside;
  –Windshield leaking water;
  –110-volt outlets on passenger side stopped working intermittently;
  –Generator shuts off and comes back on intermittently;
  –Wallpaper peeling on bunk end wall;
  –Wallpaper peeling above driver's side slideout on side wall;
  –Rear bathroom toilet leaking water when on city water;
  –Seam molding on ceiling above front bunk pulling loose;
  –Driver side slideout extending crooked;
  –Passenger side bunk slideout extending crooked;
  –Water leaking in at front of driver's side slideout;
  –Water leaking in at bunk beds slideout;
  –Driver's side window has wind noise for a period of time then goes away; and
  –Hard to add gas/hard to get nozzle in.

On October 14, 2022, while the RV was still being serviced at Giant RV, Plaintiffs contacted Thor for the first time. (*Id*. at 54, ECF 51 at 36–37). This began a dialogue about the RV with Thor's Consumer Affairs Liaison, Rick Koelndorfer that lasted beyond December 29, 2022, when Plaintiffs initiated this lawsuit. On November 1, 2022, Plaintiffs emailed Mr. Koelndorfer "requesting a buyback of our Thor Motorcoach under the California Lemon Law." (ECF 44 at 55). Mr. Bergiadis and Mr. Koelndorfer spoke by phone on November 2, 2022, after which he presented an offer from Defendant to repair the RV, either by transporting the RV to its service facility and covering Plaintiffs' airfare and rental car costs or by sending a factory technician to the RV at a local dealership. (*Id*.). Mr. Koelndorfer also offered Plaintiffs a third-party inspection of the entire coach along with a copy of the resulting report; mileage reimbursement; a new warranty; and $7,000 monetary amount payable within 30 days. (*Id*.). Plaintiffs rejected the offer repeating its buyback request. (*Id.* at 57).

On November 4, 2022, in an email about the status of repairs on Plaintiffs' RV between Mr. Koelndorfer and a representative at Giant RV, the representative explained that the repair order was opened on August 25, 2022, and closed on October 24, 2022; and that another repair order was opened on October 15, 2022, to continue the repairs. (ECF 45 at 90). In a response that day, Mr. Koelndorfer stated in a one-line email: "That is not good, CA is tough on anything over 30." (*Id.* at 91).

On December 8, 2022, the same day Mr. Bergiadis retrieved the RV from Giant RV, Mr. Bergiadis and Mr. Koelndorfer spoke again by phone. Mr. Koelndorfer presented a new offer to fix the RV that included a cash payment of $18,000, a new

warranty for two years, and a certificate to purchase a new Thor product at $5,000 above invoice in the next two years. (ECF 44 at 57; ECF 37-17 at 8). Mr. Bergiadis responded by email the next day rejecting the new offer, outlining new problems with the RV that he attributed to Giant RV during repairs, stating the RV was "useless" and "worthless," and requesting immediate buyback while advising that a lawsuit under the "California Lemon Law" would follow without a buyback. (ECF 44 at 58–61; ECF 37-17 at 7–8). Mr. Koelndorfer offered Mr. Bergiadis the chance to buy a new, larger coach at invoice pricing minus the purchase price of the RV. (ECF 51 at 37–38; ECF 37-17 at 2–6). On December 21, 2022, Mr. Bergiadis rejected that offer and requested full buyback under California law for the third time. (ECF 37-17 at 4).

Defendant did not comply with the buyback request leading Plaintiffs to file a complaint in California state court on December 29, 2022. Citing the RV's defects, Plaintiffs alleged violations of the Song-Beverly Act. (ECF 1-1). The complaint specifically alleged (1) breach of express warranty; (2) breach of implied warranty; and (3) violation of Cal. Civ. Code § 1793.2(b) for failure to begin repairs within a reasonable time and failure to service or repair the RV within 30 days and/or within a reasonable time. Plaintiffs sought statutory damages including special and actual damages, rescission of the purchase contract, restitution of all monies expended, diminution in value, incidental and consequential damages, a civil penalty of two times Plaintiffs' actual damages, prejudgment interest, and attorney fees and costs.

Defendant removed the case to federal court in the Central District of California on May 9, 2023. (ECF 1). On a joint motion, the California court transferred the case to

this Court on June 28, 2023, based on the forum selection clause incorporated into the

Warranty. (ECF 11 at 2). In a short order, the California judge explicitly stated that:

"[p]ursuant to the Stipulation between the parties, the parties agree that following

transfer, substantive law, namely, California Song-Beverly Consumer Warranty Act

(California Civil Code § 1790, *et seq.*), shall continue to apply to all claims before the

Court in Indiana." (ECF 11 at 2 (emphasis in original)).

After an unsuccessful judicial settlement conference on May 30, 2024, the parties

completed discovery, and Defendant timely filed the instant motion for summary

judgment on August 26, 2024. Defendant later moved for oral argument on October 14,

2024.[3]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the

substantive law as affecting the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when

"the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id. "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial'," and summary

---

[3] On January 15, 2025, Plaintiffs filed their Notice of New Legal Authority stating without further explanation that the California appellate court's recent opinion in Hardy v. Forest River, Inc., B331450, 2025 WL 64703 (Cal. Ct. App. Jan. 9, 2025) is relevant to the pending motion for summary judgment in this case. (ECF 52). The *Hardy* opinion provides guidance to California courts handling motions to transfer Song-Beverly cases with stipulations to California law. *Hardy* does not affect the law this Court must apply here or its consideration of Plaintiffs' claims under the Act.

judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009))).

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

IV.    DISCUSSION

The Song-Beverly Consumer Warranty Act ("the Act") "regulates warranty terms, imposes service and repair obligations on manufacturers . . . who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties." *Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 989 (1998) (citing Cal. Civ. Code §§ 1790–1795.8); *see also Nat'l R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1080 (1995). Thus, the Act mandates warranty-related conduct and provides specified remedies enforceable through both breach of express warranty and breach of implied warranty claims. *See* Cal. Civ. Code §§ 1791.1, 1791.2; *see also Smith v LG Elects. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *9 (N.D. Cal. Mar. 11, 2014). Consistent with the parties' stipulation memorialized in the California court's transfer order, the Act will be applied to Plaintiffs' substantive claims. (*See* ECF 11 at 2).

A.    **Express Warranty Claim**

The Act protects consumers who have purchased products covered by an express warranty. *Robertson v. Fleetwood Travel Trailers of Cal.*, 144 Cal. App. 4th 785, 740 (2006). The Act requires manufacturers, or their representative in California, to replace the warrantied product or reimburse the purchase price to the buyer, less the amount attributable to the buyer's use, if they do not "service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts." Cal. Civ. Code § 1793.2(b)(1).

A plaintiff pursuing an action under the Act has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 152 (2013), *as modified on denial of reh'g*

(July 8, 2013) (citing *Ibrahim v. Ford Motor Co.* 214 Cal.App.3d 878, 886–887 (1989); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001)).

It is undisputed that the nonconformities in Plaintiffs' RV were covered by the Warranty and that not all of the nonconformities had been repaired on December 8, 2022, when Plaintiffs retrieved the RV from Giant RV for the last time. Yet Plaintiffs argue that genuine disputes of material fact exist as to whether the nonconformities substantially impaired the use, value, or safety of the RV; how many times Plaintiffs presented the RV for repair; and whether the unrepaired issues remained after a reasonable number of repair attempts.

*Nonconformity Element*

Whether a nonconformity substantially impairs the use, value, or safety of goods sold to a buyer is determined by assessing "what a reasonable person would understand to be a defect . . . within the specific circumstances of the buyer." *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001). Thus, whether nonconformities constitute substantial impairment must be decided by the trier of fact. *Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250 (1995). Factors to consider include "the

nature of the defects; the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted; inconvenience to buyer; and the availability and cost of alternative goods pending repair." *Id.* (internal quotations and citations omitted).

Defendant focuses on the degree to which the RV could be used while repairs were being attempted in arguing that there was no substantial impairment on the use, value, or safety of the RV. As no one disputes, Plaintiffs signed the "usable and available for use" Notice each time they took the RV to Giant RV for repairs. Further, Mr. Bergiadis testified that Giant RV told him he could pick up the RV if he needed it so long as they were not working on it. (ECF 37-1 at 67, 100:11–22). In fact, Plaintiffs did just that between their March 7th and April 5th visits to Giant RV. Defendant also emphasizes that Plaintiffs continued to take the RV on trips even while nonconformities remained unresolved between March 7th and April 5th and then after December 8th.

Plaintiffs acknowledge those uses, but also direct the Court to evidence that the RV was at Giant RV for at least 131 days[4] in 2022. Plaintiffs also contend the RV's use was still impaired even if it could be taken on trips. In support, Plaintiffs indicate that they endured ongoing toilet leaks, generator malfunction, bunks and slideouts that were improperly equipped and did not operate properly, and an entry door malfunction while they used the RV as a family. As to the value and safety of the RV,

---

[4] This includes 25 days between April 5, 2022, and April 30, 2022; and 106 days between August 25, 2022, and December 8, 2022. (ECF 40 at 16). Plaintiffs accept this calculation, but contend that the 8 days between February 2, 2022, and February 9, 2022, should also be counted for a total of 139 days out of service. (ECF 43 at 24).

Plaintiffs presented evidence that on multiple occasions, the entry door would not unlock leaving them either trapped inside the RV or unable to get into the vehicle. Plaintiffs reference one incident where their son had to climb out a window to escape the RV. Plaintiffs also argue that the value of the RV was impaired by an incident of water leaking in through the slideouts.

Defendant contends that none of these issues substantially impair the use, value, or safety of the RV. "Issues of the existence and nature of an alleged nonconformity are questions of fact for the jury." *Robertson*, 144 Cal. App. 4th at 801 n.12. As a result, Plaintiffs have established a genuine dispute of material fact as to substantial impairment of use, value, or safety on this evidence alone.

Plaintiffs also contend that all the individual issues with the RV could be part of a "complex of related issues" establishing a nonconformity for which Defendant could be liable under the Act. In interpreting Cal. Civ. Code § 1793.2(d)(2), "California courts have recognized that a 'nonconformity' may include 'an entire complex of related conditions.'" *Godinez v. BMW N. Am., LLC*, Case No. 2:17-cv-05072-FLA (RAOx), 2021 WL 6102911, at *4 (C.D. Cal. Sept. 28, 2021) (citing *Robertson*, 144 Cal. App. 4th at 801 n.11). "Whether or not the individual issues presented by the individual components at issue [are] related to a 'complex of related conditions' with the . . . vehicle is for the jury to determine." *Manoukian v. BMW of N. Am. LLC*, Case No. CV 21-8813-KS, 2023 WL 9319004, at *2 (C.D. Cal. Sept. 25, 2023) (applying the analysis of *Godinez* and *Robertson*). Accordingly, it is the jury's role, not this Court's, to take the evidence Plaintiffs have presented and determine whether the use, value, or safety of the RV was substantially

impaired so as to satisfy the nonconformity element of Plaintiffs' breach of express warranty claim. *See Godinez*, 2021 WL 6102911, at *1, *4, *6 (refusing to exclude evidence of defects that were never presented for repair or were only subject to one repair attempt or otherwise limit evidence from any repair attempt).

Therefore, the record taken as a whole, including the evidence presented by Plaintiffs regarding their experiences with the RV between repairs and all the issues with the RV, could lead a reasonable jury to find that Plaintiffs have satisfied the nonconformity element of their breach of express warranty claim. *See Schreidel*, 34 Cal. App. 4th at 1250.

### *Presentation and Failure to Repair Elements*

It is undisputed that Plaintiffs presented the RV to Giant RV for repair of nonconformities at least two times. (ECF 44 at 41–50; *see also* ECF 40-1). Defendant counts the RV's April 5, 2022, and August 25, 2022, visits to Giant RV as the only presentations for repair. Plaintiffs argue that the February 2, 2022, and March 7, 2022, visits should also be counted for a total of four presentations. Regardless of whether there were two or four presentations of the RV, the RV was presented for repair satisfying this element of the express warranty claim. The harder question to answer is whether Plaintiffs have presented evidence from which a reasonable jury could find in their favor as to the failure to repair element.

Undisputedly, some of the RV's nonconformities presented to Giant RV were not repaired. (ECF 44 at 41–50; *see also* ECF 40-1). But the parties diverge on whether those

nonconformities remained "after a reasonable number of repair attempts." *See Donlen,
217 Cal. App. 4th at 152.*

Defendant argues that Plaintiffs did not make a reasonable number of repair
attempts before bringing this lawsuit. In support, Defendant relies heavily on the terms
of the Limited Warranty that require Plaintiffs to exhaust both the Repair Remedy and
the Back-Up Remedy before seeking legal or equitable remedies for breach of the
Warranty. (*See* ECF 37-8 at 11). Under the Warranty, the Back-Up Remedy can only be
pursued "[i]f the primary repair remedy fails to successfully cure any defect after a
reasonable number of repair attempts." (*Id.*). The Back-Up Remedy is defined as the
"sole and exclusive remedy" after the Repair Remedy fails and requires the RV owner
to have Defendant "pay an independent service shop of [the owner's] choice to perform
repairs to the defect . . . ." (*Id.*). As a result, Defendant contends that the Warranty is
consistent with the Act in that it requires a reasonable number of repair attempts and
that Plaintiffs' failure to exhaust the remedies of the Warranty, especially the Back-Up
Remedy, dooms their claim. Defendant overstates the power of the Warranty's terms in
a claim under the Act.

To start, nothing in the Warranty can strip Plaintiffs of their rights under the Act.
The Act contains an anti-waiver provision that states: "Any waiver by the buyer of
consumer goods of the provisions of [the Act] shall be deemed contrary to public policy
and shall be unenforceable and void." Cal. Civ. Code § 1790.1. "The Act's antiwaiver
provision is extremely broad; it is not limited to warranties or any particular time frame
during the purchase process, but encompasses all mandated remedies afforded to

buyers." *Rheinhart v. Nissan N. Am., Inc.*, 92 Cal. App. 5th 1016, 1034 (2023), *reh'g denied* (July 25, 2023), *review denied* (Oct. 18, 2023). To limit the definition of "reasonable number of repair attempts" to the Warranty's terms would preclude Plaintiffs from their rights to a determination of reasonableness by a trier of fact. *See Robertson*, 144 Cal. App. 4th at 799 ("The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances . . . ").

Defendants imply that the California standard for a reasonable number of repair attempts under the Act—more than one—aligns with a comparable standard in the Seventh Circuit. The Seventh Circuit has concluded that "a reasonable opportunity to cure, at least in cases where the defects are somewhat minor, and not affecting full use of the vehicle, means at least three chances." *Zylstra v. DRV, LLC*, 8 F.4th 597, 603 (7th Cir. 2021). The Warranty appears consistent with the Seventh Circuit's standard assuming that it requires at least two repair attempts to exhaust the Repair Remedy and followed by at least one repair attempt to satisfy the Back-Up Remedy. But the Act does not require three repair attempts to satisfy its reasonableness requirement. It simply requires "a reasonable number of attempts." Cal. Civ. Code § 1793.2(d)(1). Given the plural construction of "attempts," there must be, at a minimum, "more than one opportunity to fix the nonconformity." *Robertson*, 144 Cal. App. 4th at 799 (citing *Silvio v. Ford Motor Co.* 109 Cal. App. 4th 1205, 1208–09 (2003)). As a result, a jury could find that two repair attempts meet the reasonableness requirement under the Act. As such, any provision in the Warranty, including the Back-Up Remedy provision, that demands

more than two repair attempts exceeds the scope of the Act and is unenforceable and void against public policy.

Without the certainty from the Warranty that Defendant suggests, the analysis continues as to whether Plaintiffs have established a genuine dispute of material fact as to Defendant's alleged failure to remedy the nonconformities in Plaintiffs' RV after a reasonable number of repair attempts. "Each occasion that an opportunity for repairs is provided counts as an attempt, even if no repairs are actually undertaken." *Robertson*, 144 Cal. App. 4th at 799 (citing *Oregel*, 90 Cal. App. 4th at 1103). The consumer's only obligation "is to permit the manufacturer a reasonable *opportunity* to repair the vehicle." *Oregel*, 90 Cal. App. 4th at 1103 (emphasis in original) (internal quotations omitted). "Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible." *Id*. at 1103–04.

The parties agree that the RV's visits to Giant RV for repairs on April 5, 2022, and August 25, 2022, count as repair attempts. Plaintiffs contend that the work reflected in Giant RV's February 2, 2022, repair order should also be counted as a repair attempt along with their visit to Giant RV on March 7, 2022.

As to the February 2, 2022, repairs, Plaintiffs cite to paragraph 23 of their expert's report (ECF 45 at 8–9) and the Giant RV repair order generated on that visit (*Id*. at 36). In paragraph 23, the expert, Darrell Blasjo, recited the issues and repairs from the February 2nd repair order then concluded that "[t]hese repairs were not reasonable as they did not bring about a permanent resolution to these defects." (*Id*. at 9). Mr. Blasjo

ended his review of the February 2nd repair order stating that "[t]he vehicle was out of service for eight days and the odometer did not advance, so this repair was not reasonable." (*Id.*).

On review of summary judgment, the Court may only consider "facts whose substance would be admissible at trial . . . ." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). Expert witness opinion testimony must, among other things, be "based on sufficient facts or data; [be] the product of reliable principles and methods; and [reflect] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). Therefore, an expert must both set forth facts and his process of reasoning in support of his opinion. *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1574 (N.D. Ill. 1996) (citing *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989). Mr. Blasjo's paragraph 23 does not describe his reasoning. Rather, his "opinions" are barebones legal conclusions he is not qualified to make and merely regurgitate the legal elements of Plaintiffs' claims. In other words, Mr. Blasjo's opinions in paragraph 23 add nothing to the judicial process and will not be considered. *See Mid-State Fertilizer Co.*, 877 F.2d at 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.")

With nothing more, Plaintiffs have not presented evidence to connect the February 2nd repair visit to the Warranty signed by Plaintiffs on February 4, 2022. In fact, Plaintiffs have presented evidence to suggest that on February 2, 2022, the RV was subject to the January 16, 2022, sales contract, which only Ms. Bergiadis signed and was rescinded on February 4, 2022, by the rewritten contract to which both Mr. and Ms.

Bergiadis were signatories. Nothing in the record suggests that Defendant was obligated to Plaintiffs under the Act on February 2, 2022. As a result, Plaintiffs have not established that the February 2nd repairs should be counted as a repair attempt under the Act.

With that said, there is no question that the RV's visit to Giant RV on March 7, 2022, occurred while Plaintiffs' RV was covered by the Warranty that accompanied the parties' purchase of the RV on February 4, 2022. The parties just dispute whether it counts as a repair attempt because nothing happened to the RV during that visit. On that day, Plaintiffs informed Giant RV of their concerns. Plaintiffs then took the RV, consistent with the option noted in the "usable and available for use" Notice they signed, and returned it on April 5th when the RV was actually serviced. Despite Defendant's contention to the contrary, the March 7th visit counts as a repair attempt under California law. *See Robertson*, 144 Cal. App. 4th at 799; *Oregel,* 90 Cal. App. 4th at 1103–04. That leaves a genuine dispute of material facts on whether those three attempts amount to a "reasonable number of attempts" under Section 1793.2(d)(1) of the Act.

With genuine disputes of material fact on the nonconformity and failure to repair elements, the motion for summary judgment must be denied as to Plaintiffs' breach of express warranty claim.

**B.      Implied Warranty Claim**

Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's

implied warranty that the goods are merchantable" at the time of delivery absent disclaimers prescribed by the Act. Cal. Civ. Code § 1792; *see also Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297, 1306 (2009). An implied warranty of merchantability means that the consumer goods "[p]ass without objection in the trade under the contract description [and are] fit for the ordinary purposes for which such goods are used." *Id.* § 1791.1(a)(1)–(2).[5] "[T]he implied warranty of merchantability arises by operation of law [and] provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Ct.,* 37 Cal. App. 4th 1291, 1295 (1995), *as modified on denial of reh'g* (Sept. 21, 1995). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip v. Mercedes-Benz USA, LLC,* 155 Cal. App. 4th 19, 26 (2007). A consumer good is fit for its ordinary purpose even if it is not free of all defects so long as it is "in safe condition and substantially free from defects." *Id.* at 27 (affirming jury instruction using this language); *see also Mexia,* 174 Cal. App. 4th at 1303. "[D]efects based on aesthetics or mere annoyances do not render a vehicle unmerchantable." *Resnick v. Hyundai Motor Am., Inc.,* Case No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017) (citing other California decisions). At the same time, a defect that creates a "substantial safety hazard" would make a good unfit for its ordinary purpose thus breaching the implied warranty of merchantability. *Gutierrez v. Carmax Auto Superstores Cal.,* 19 Cal. App. 5th 1234, 1248 (2018), *as modified on denial of reh'g* (Feb. 22, 2018); *see also* Cal. Civ. Code § 1791.1(a)(2).

---

[5] To be merchantable, goods must also be "adequately contained, packaged, and labeled [and conform] to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a)(3)–(4). These elements are not discussed because neither party raises concerns about them.

Consistent with the California civil jury instructions for a breach of implied warranty of merchantability claim under the Act, Plaintiffs must prove five factual elements as to the condition of their RV to prevail. *See* Cal. Civ. Jury Instruction 3210; *cf.* *Gutierrez*, 19 Cal. App. 5th at 1246. There is no dispute about the first two elements—that Plaintiffs bought the RV manufactured by Defendant and that Defendant was in the business of manufacturing consumer goods at the time Plaintiffs bought the RV. The parties dispute whether Plaintiffs can establish the last three elements, which require proof that (a) the RV was not of the same quality as those generally acceptable in the trade, or fit for its ordinary purpose; (b) Plaintiffs were harmed; and (c) that Defendant's breach of the implied warranty was a substantial factor in causing Plaintiffs' harm. *See* Cal. Civ. Jury Instruction 3210.

Factually, Defendant argues that Plaintiffs have not, and cannot, present evidence that the RV defects create a substantial safety hazard. Plaintiffs once again rely on the opinions of their expert, Mr. Blasjo, to show that the RV defects significantly impaired its use, safety, and value; that the RV is not of the same quality as other vehicles normally accepted in the trade; and that the RV is not fit for the purposes for which it was purchased. (ECF 44 at 81 (citing "Plaintiffs' Exhibit 23, para. 18")). Paragraph 18 of Mr. Blasjo's expert report states:

> The Subject Vehicle was out of service over 70 days to effect repairs in the repair attempts prior to the sale date on 02-24-2022[6]. The [sic] However according to the information obtained at the vehicle inspection on 12-23-2023 the vehicle was not conformed to warranty from 04-05-22 until 12-26-

---

[6] Mr. Blasjo's opinion inconsistently references the date Plaintiffs purchased the RV. Mr. Blasjo's paragraph 18 is the only place in the record where the purchase date is listed as February 24, 2022. In paragraph 13, Mr. Blasjo's identifies the purchase date as June 21, 2020. (ECF 45 at 6, ¶ 13).

23 and beyond. The problems with the wallpaper, cabinet operations, water leaks at the sliders, water leaks at the windshield, fuel refilling problems, and slider operation had not been repaired. Therefore, this vehicle remains in an unrepaired state, not conforming to warranty from the date it was built until 12-26-2023. This is over 2 years and 8 months. The loss of use is not reasonable. The repairs attempted are not reasonable. The number of repairs attempts is not reasonable. The actions taken by the technicians in many of these repair presentations are not reasonable. These failures in the Subject Vehicle, as well as any unrepaired failures, significantly impair the Vehicle's use, safety and value. This vehicle is not of the same quality of other vehicles normally accepted in the trade. This vehicle is not fit for the purposes for which it was purchased.

(ECF 45 at 7, ¶ 18). Like paragraph 23 of his report discussed above, Mr. Blasjo simply recites facts about days of service and repairs then reaches legal conclusions tracking the elements of an implied warranty claim without any explanation for how he reached those decisions. As a result, Mr. Blasjo's opinions in paragraph 18 add nothing to the assessment of the instant motion and will not be considered. *See Mid-State Fertilizer Co., 877 F.2d at 1339*.

As already decided, Plaintiffs have presented sufficient evidence to create a genuine dispute of material fact as to whether the RV's defects substantially impaired its use, value, or safety for purposes of the express warranty claim. Any of those facts showing defects in the RV at the time of delivery would also be relevant to the determining whether the defects created a substantial safety hazard such that the RV was not fit for its ordinary purpose in violation of the implied warranty. Defendant does not dispute that Plaintiffs have put forth facts alleging that certain defects caused safety issues. Rather, Defendant argues that those issues do not rise to the level of substantial safety hazards. In so doing, Defendant confirms that a genuine dispute of

24

material fact also exists as to breach of the implied warranty, which in turn leaves genuine disputes as to the harms Plaintiffs incurred and whether Defendant's alleged breach caused those harms.

Accordingly, summary judgment must be denied as to Plaintiffs' implied warranty claim.

### C.   Violation of California Civil Code § 1793.2(b)

Defendant also seeks summary judgment as to Plaintiffs' claim alleging violation of Cal. Civ. Code § 1793.2(b), another section of the Song-Beverly Act. Section 1793.2(b) provides that a manufacturer, or its representative in California, shall begin service or repair necessary under express warranties within a reasonable amount of time. *See Chillon v. Ford Motor Co.*, CV 22-2111 DSF (AGRx), 2023 WL 3035369, at *2 (C.D. Cal. Feb. 21, 2023). Consumer "goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days" unless "the buyer agrees in writing to the contrary." *Id.* "Delay caused by conditions beyond the control of the manufacturer or its representatives shall serve to extend this 30-day requirement." *Id.* Damages for Section 1793.2(b) claims are limited to out-of-pocket damages, not replacement or restitution under Sections 1793.2(d) and 1794(b) of the Act. *Noori v. Jaguar Land Rover N. Am., LLC*, Case No. 2:19-cv-08624-FLA (JPRx), 2021 WL 1232450, at *9 (C.D. Cal. Apr. 1, 2021) (citing *Galvadon v. DaimlerChrysler Corp.*, 9 P.3d 752, 761–62 (Cal. 2004)). As a result, Plaintiffs must show that they suffered out-of-pocket expenses during the delayed repair. *See Dominguez v. Ford Motor Co.*, Case No.: 2:22-cv-09064-AB-PVC, 2024 WL 3009303, at *4 (C.D. Cal. May 3, 2024).

Plaintiffs support their claim arguing that the RV was presented for repair four times between February 2, 2022, and December 8, 2022[7], during which the RV was out of service at least 131 days, including one visit between August 25, 2022, and December 8, 2022, of well over 30 days. Plaintiffs cite no other facts or law to support their claim that Defendant violated Section 1793.2(b). In defense, Defendant argues that none of these visits are violations because Plaintiffs signed the Notices that the RV was "usable and available for use" each time they brought the RV to Giant RV for repairs. According to Defendant, the Notices constituted Plaintiffs' agreement in writing to service and repairs exceeding 30 days. Plaintiffs provide no evidence, or response of any kind, regarding the effect of the Notices on their Section 1793.2(b) claim establishing that Plaintiffs consented in writing to any delay through the Notices. Thus, liability under Section 1793.2(b) is precluded.

Even if Plaintiffs could establish liability under Section 1793.2(b), they have presented no evidence, or otherwise addressed Defendant's contentions, regarding damages suffered during any delayed repair. *Accord Dominguez*, 2024 WL 3009303, at *4 (granting summary judgment for lack of damages on Section 1793.2(b) claim). Therefore, with no genuine dispute of material fact, Defendant is entitled to summary judgment as a matter of law on Plaintiff's Section 1793.2(b) claim.

---

[7] In their response brief, Plaintiffs reference December 7, 2022 (ECF 43 at 30), even though Mr. Bergiadis's testimony and the email communications between Mr. Bergiadis and Mr. Koelndorfer confirm that Plaintiffs retrieved the RV from Giant RV on December 8, 2022. The December 8th date is used here for consistency and does not affect the outcome of this issue.

### D.    Civil Penalty—Willfulness

"Any buyer of consumer goods who is damaged by a failure to comply with [the Act] may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a). If the buyer proves that the violation of the Act was willful, "the judgment may include . . . a civil penalty not to exceed two times the amount of actual damages." Id. § 1794(c)[8].

First, it has already been determined that Defendant is entitled to summary judgment on Plaintiffs' claim for violation of the 30-day repair rule in Section 1793.2(b). Therefore, Plaintiffs are not entitled to a civil penalty arising from that claim.

Second, the civil penalty provision does not apply to claims "based solely on a breach of an implied warranty." Id.; see also Soto v. Rust-Oleum Corp., Case No. CV 15-1891-GW(JCx), 2015 WL 12827761, at *4 (C.D. Cal. May 28, 2015). Therefore, Plaintiffs cannot recover the civil penalty on their surviving implied warranty claim even if they eventually prevail.

Lastly, the only claim for which a civil penalty may be warranted is Plaintiffs' remaining breach of express warranty claim under the Act. To qualify for the civil penalty, Plaintiffs must prove that Defendant's failure to repurchase or replace the RV was "willful." "[A] violation [of the Act] is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing

---

[8] In their Interrogatory Response 4, Plaintiffs indicate they are pursuing "a civil penalty for up to two times Plaintiff's [sic] actual damages" citing Cal. Civ. Code section 1794(c) and 1794(e)(1). (ECF 37-16 at 9). As Defendant correctly notes, Section 1793(e)(1) does not apply here because it limits the civil penalty to violations of paragraph 2 of Section 1793.2(d) of the Act involving a "new motor vehicle," which does not include "any portion designed, used, or maintained primarily for human habitation" such as an RV. See Cal. Civ. Code § 1793.22(e)(2)–(3). Accordingly, only Section 1794(c) is considered.

the statutory obligation were not present." *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal.

App. 4th 174, 185 (1994). In support of their claim, Plaintiffs restate the sequence of

communications between Mr. Bergiadis and Mr. Koelndorfer between October 14, 2022,

until the complaint was filed on December 29, 2022. As Plaintiffs suggest, it is

undisputed that Mr. Bergiadis requested that Thor repurchase the RV more than once

and that Thor did not. Instead, Thor made offers initially to repair the remaining issues

then later to trade-in or replace the RV. Without more, however, Plaintiffs have not

established a genuine dispute of material fact as to Defendant's willfulness.[9]

Defendant contends that its failure to replace the RV or reimburse Plaintiffs for

the RV stemmed from a good faith and reasonable belief that the statutory buyback was

not required. Defendant believed that Plaintiffs had only presented the RV for repairs

twice—once on April 5, 2022, and once on August 25, 2022, and that under the Act, four

repair attempts was the presumptive "reasonable number of repair attempts" under the

Act. Indeed, Section 1793.22(b)(2) provides that

> [i]t shall be presumed that a reasonable number of attempts have been
> made to conform a new motor vehicle to the applicable express warranties
> [if the] same nonconformity has been subject to repair four or more times
> by the manufacturer or its agents and the buyer has at least once directly
> notified the manufacturer of the need for the repair of the nonconformity.

---

[9] Plaintiffs may have designated other evidence and made additional argument for their willfulness claim on page 26 of Plaintiffs' memorandum in opposition to Defendant's motion for summary judgment (ECF 43 at 32). However, page 26 is not being considered because the brief exceeded the page limit authorized by Local Rule 7-1(e)(1).

Defendant also asserts its belief that the buyback was unwarranted because Plaintiffs had not exhausted their remedies under the Warranty. Moreover, Defendant was confident that any of the remaining nonconformities could be repaired.

By failing to designate evidence that Defendant's failure to buy back the RV resulted from a bad faith, unreasonable belief that its statutory obligation under Section 1793.2(b) did not apply, Plaintiff has not "put up" evidence from which a reasonable jury could conclude that Thor's actions were "willful." Defendant is thus entitled to judgment as a matter of law.

### E.    Claims Against Doe Defendants 1 through 10

Plaintiffs' complaint names "Does 1 through 10, inclusive" as defendants and levels all four causes of action against them in addition to Defendant Thor Motor Coach, Inc. (ECF 1-1). Plaintiffs allege that they

> do not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendant issued herein as Does 1 through 10, inclusive, under the provisions of section 474 of the California Code of Civil Procedure. Defendant Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiffs. Plaintiffs will seek leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendant, together with appropriate charging allegations, when ascertained.

(*Id*. at 3, ¶ 5). While Plaintiffs named Does 1 through 10 as defendants in their complaint on December 29, 2022, the record contains no evidence that they have continued to prosecute their claims against them. As of this date, no proof of service as to the ten Does has been filed. No appearance of any kind has been made by, or on behalf of, any of the ten Does either.

Fed. R. Civ. P. 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Named defendants who did not move for summary judgment must not be dismissed *sua sponte* on Rule 4(m) grounds before giving the plaintiff notice, opportunity to show good cause, and opportunity to request an extension of time to perfect service. *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005). However, "[d]ismissal of a John Doe defendant on the court's own motion for plaintiff's failure to timely identify the defendant and obtain service of process within the limits of Fed. R. Civ. P. 4(m) is permissible, even without notice to plaintiff." *Crawford v. Countrywide Home Loans, Inc.*, No. 3:09CV247-PPS-CAN, 2010 WL 597942, at *6 (N.D. Ind. Feb. 12, 2010), *aff'd*, 647 F.3d 642 (7th Cir. 2011) (citing *Brengettcy*, 423 F.3d 674 at 683).

Plaintiffs here have neither identified the ten Doe Defendants nor provided proof that they obtained service of process within the time limit of Rule 4(m). Therefore, Doe Defendants 1 through 10, inclusive are dismissed pursuant to Fed. R. Civ. P. 4(m). *See Brengettcy*, 423 F.3d at 683.

## V.    CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. (ECF 37). Plaintiffs' claims under the Song-Beverly Consumer Warranty Act for breach of express warranty and breach of implied warranty of merchantability survive while Plaintiffs' claims for violation of

Section 1793.2(b) and for relief in the form of a civil penalty under Section 1794(c) are dismissed.

As Defendant's motion was resolved without oral argument, Defendant's Request for In-Person Oral Argument is **DENIED**. (ECF 50).

Plaintiffs' claims against Doe Defendants 1 through 10, inclusive are

**DISMISSED**.

Lastly, as discovery has been closed since July 26, 2024, and Defendant's summary judgment motion has been resolved, this case is now set for a status conference before Judge Cristal C. Brisco to discuss mediation and establish a date for trial and related deadlines. The status conference will be held via Zoom on **May 5, 2025**, at 1:30 PM (Eastern Time). A link will be emailed to counsel separately.

SO ORDERED on March 24, 2025.

  /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT